11668

BANK OF JOHNSONVILLE, S. C. v. SOVEREIGN CAMP W. O. W.

(126 S. E., 332)

INSURANCE—NOTICE TO LOCAL CLERK OF ASSIGNMENT OF RIGHT TO BENEFIT HELD NOT IMPUTABLE TO SOCIETY.—Under Civ. Code 1922, § 4160, and constitution, laws, and by-laws of fraternal society, made part of certificate under Section 4159, notice of assignment of right to benefit to local clerk who had no authority to receive notice of assignment or to bind the sovereign camp by his consent, and whose duty consisted merely of the ministerial act of delivering check to beneficiary, *held* not imputable to society, and society was not bound by the assignment.

Before DENNIS, J., Florence, December, 1923. Affirmed.

Action by Bank of Johnsonville, S. C., against Sovereign Camp Woodmen of the World. Judgment for defendant and plaintiff appeals.

The decree of Judge Dennis follows:

This is an action to recover $1,000 (less the amount of certain assesments) claimed by the plaintiff by virtue of an alleged transfer and assignment to it of a death benefit on a beneficiary certificate issued by the defendant, Sovereign Camp, Woodmen of the World, to James B. Saverance for the benefit of Mamie L. Saverance, his wife, which said death benefit was paid to her after the alleged transfer or assignment to the plaintiff. The case was submitted to me at my chambers at Darlington, S. C., on a stipulation of counsel containing a statement of the facts involved, which are substantially as follows:

The plaintiff is a South Carolina banking corporation and the defendant is a fraternal benefit association, organized under the laws of Nebraska and operating in South Carolina under the provisions of Sections 4143 to 4185 of Volume III of the Code of Laws of South Carolina, 1922.

On January 26, 1914, a beneficiary certificate in the sum of $1,000 was issued by the defendant to James B. Saverance, payable to Mamie L. Saverance, his wife. On or about February 18, 1920, he died, and thereafter his widow, the said Mamie L. Saverance, intermarried with B. L. Harrison. Subsequently, proofs of the death of James B. Saverance were made and filed with the defendant, and on or about June 7, 1921, a warrant of the defendant for $901.50, the entire amount due upon said beneficiary certificate, was forwarded to John W. Ivy, Clerk of Pine Camp, No. 108, at Timmonsville, S. C., of which the said James B. Saverance had been a member, with instructions to deliver the same to the said beneficiary, Mrs. Harrison, in full payment of all benefits due her under the said certificate. The said warrant was so delivered and accepted by her. It was inclosed with

a letter from J. T. Yates, Sovereign Clerk, to John W. Ivy, clerk of the local camp at Timmonsville, S. C., of which the following is a copy:

"108—S. C.                              June 10, 1921.

"Mr. John W. Ivy, Timmonsville, S. C.—Esteemed Sovereign: We inclose herewith warrant E—89330 for $901.50 payable to Mamie L. Saverance Harrison in full payment of all benefits due the beneficiary under certificate 49359—S. C., formerly held by the late Sovereign James B. Saverance.

"This claim is approved for the full amount of death benefits for which the certificate was in effect at the death of the assured and out of the proceeds of this certificate there is deducted $13.50 due on the account of the deceased in accordance with the statement inclosed.

"Under the provisions of Section 60 of the Constitution and laws of the society adopted by the Sovereign Camp in July, 1919, there was levied on every member under date of December 31, 1919, a special assessment of the amount of single premium necessary to maintain the certificates of those members in effect at the former rates of assessment and those members who neither adopted the rates provided for their attained age nor paid this assessment, thereby caused the assessment to become a lien against the proceeds of their certificates, which it is necessary to adjust with interest at the rate of 5 per cent out of the amount of the certificate when a claim occurs thereunder.

"Sovereign Saverance did not elect to rerate his certificate before his death, nor did he pay the assessment lien, therefore, in making payment of the claim it is necessary to adjust the amount of the lien out of the proceeds of the certificate.

"Yours sincerely,

"[signed] J. T. Yates,

"R.HL.                              Sovereign Clerk."

On June 25, 1921, the said J. T. Yates, Sovereign Clerk, wrote to Mrs. Harrison as follows:

"June 25, 1921.

"Mrs. J. B. Saverance Harrison, Hemingway, S. C.— Dear Madam: The claim under the certificate of this society formerly held by the late J. B. Saverance has been approved and paid, and on June 10 warrant in payment to you as beneficiary was forwarded to Mr. J. W. Ivy, Clerk of our Camp at Timmonsville, S. C., of which Mr. Saverance was formerly a member.

"Yours sincerely,

"[Signed] J. T. Yates,

"RHL-HL.                                      Sovereign Clerk."

Before proofs of death were filed with and approved by the defendant, and before the said warrant was issued, the said Mamie L. Saverance Harrison, beneficiary, under said certificate, and her husband, B. L. Harrison, desiring to purchase from one J. W. Williams a dwelling house and lot in the town of Johnsonville, S. C., offered him, in part payment therefor, an assignment of her interest as beneficiary under the said certificate. Before accepting the said assignment or transfer of her interest thereunder, Mr. Williams requested her to obtain a statement in regard thereto from the local camp, of which her deceased husband had been a member, and pursuant to this request she wrote as follows:

"Jan. 6, 1921.

"Mr. J. W. Ivy—Dear sir: Please write Mr. J. W. Williams a letter showing that I have one thousand dollars due me by the W. O. W. Mr. Harrison will explain to you why I want this.

"Sincerely,

.      Mrs. J. B. Saverance.

"Mrs. B. L. Harrison."

On January 7, 1921, the said J. W. Williams received from the said J. W. Ivy a letter of which the following is a copy:

"Pine Camp, No. 108, Woodmen of the World.
"Timmonsville, S. C., Jan. 7, 1921.

"Mr. J. W. Williams, Johnsonville, S. C.—Dear Sir: This is to advise that I am clerk of Pine Camp No. 108, Woodmen of the World, located at Timmonsville, S. C., and that the Sovereign Camp, W. O. W., Omaha, Nebraska, is indebted to Mrs. Mamie Saverance, now Mrs. Mamie Harrison, one thousand dollars on the certificate of her late husband, J. B. Saverance, bearing number 43959, less the amount of a certain lien entered against said policy, on January 1, 1920, as will appear in option 'one' under their system of rerating at that time.

" Yours very truly,          J. W. Ivy, Clerk."

This letter bore the seal of Pine Camp, No. 108 of the Woodmen of the World. Thereafter, on January 9, 1921, the said Mamie L. Saverance Harrison executed and caused to be delivered to the said J. W. Williams an instrument, of which the following is a copy:

"Jan. 9, 1921.

"To L. Y. Crosswell, Consul Commander, and J. W. Ivy, Clerk of Woodmen of the World, Pine Camp No. 108, Timmonsville, S. C.:

"This is to instruct and give you authority to turn over check which is due me by the Woodmen of the World on policy No. 43959 for one thousand dollars ($1,000.00) less lien against policy for dues on certificate of my husband, J. B. Saverance, deceased, to J. W. Williams, his heirs and assigns.

"Mamie Saverance, [Seal]
"Beneficiary.

"Mrs. B. L. Harrison.

"Witness my hand and seal this the 9th day of Jan., 1921, in the presence of

"W. H. Dusenbury.
"B. L. Harrison."

On the same day, the said J. W. Williams accepted the said assignment or transfer of Mrs. Harrison's interest in said certificate as part payment of the purchase price of said dwelling house and lot, and sold and conveyed the same to her and gave notice thereof to Pine Camp No. 108 of the Woodmen of the World, at Timmonsville, S. C. Thereafter, Mrs. Harrison and her husband occupied the home so purchased and continued to occupy and use the same for a considerable period of time, and, subsequently, without any fault or action on the part of the said Williams or of the plaintiff in this action, voluntarily moved from and vacated the said premises. Thereafter, the plaintiff herein, for valuable consideration, purchased from the said J. W. Williams the aforesaid transfer or assignment, which bears the following indorsement:

"I hereby transfer without recourse to me all my right, title, and interest in the above for the purpose of retiring certain obligations to Bank of Johnsonville, S. C.

"J. W. Williams."

Subsequently, the plaintiff, through its attorneys, notified Pine Camp No. 108, Woodmen of the World, at Timmonsville, S. C., of the claim and alleged right of the plaintiff herein to have and receive the proceeds of the said beneficiary certificate, and on the 11th day of February, 1921, in answer to said notice, J. W. Ivy, clerk of the said camp, wrote a letter to plaintiff's attorney, of which the following is a copy:

"Arrowsmith & Muldrow, Attorneys at Law, Florence, S. C.—Gentlemen: Yours in the matter *Bank of Johnsonville v. J. W. Williams et al.,* received this day. For your information, wish to say: This claim is for $1,000 less a certain lien in accord with the system of rerating by Sov. Camp, W. O. W., inaugurated Jan. 1, 1920.

"Yours very truly,                    J. W. Ivy."

When the plaintiff received from J. W. Williams the transfer of Mrs. Harrison's assignment, she and her hus-

band were occupying the said dwelling house and lot as a home.

It is admitted that the defendant, Sovereign Camp, Woodmen of the World, had no notice or knowledge of any of the transactions hereinbefore recited, until after its warrant for the amount owing on the said beneficiary certificate had been issued and delivered to Mrs. Harrison through John W. Ivy, clerk of the camp at Timmonsville, S. C.; but the plaintiff contends that J. W. Ivy, clerk of the local camp, was the defendant's agent and that his knowledge of said transaction is imputed to the defendant.

The beneficiary certificate sued on provides, as required by Section 4159 of Volume III of the Code of Laws of South Carolina, 1922, that:

"This certificate, together with the articles of incorporation, constitution, and laws of the Sovereign Camp of the Woodmen of the World and the application for membership and medical examination of the member herein named, and all amendments to each thereof, shall constitute the agreement between the society and the member, * * * and any changes, additions, or amendments to the articles of incorporation, constitution, or laws, duly made or enacted subsequent to the issuance of this benefit certificate, shall bind the member named herein and his beneficiaries, and shall govern and control the agreement in all respects the same as though such changes, additions, or amendments had been made prior to and were in force at the time of the application for membership."

Section 83b of the constitution, laws, and by-laws of the defendant society (relating to the death benefits) provides that:

"After proof has been properly executed and the claim approved by the Sovereign Commander, the Sovereign Clerk shall draw a warrant on the beneficiary fund, attested by the Sovereign Commander, for the amount approved, payable to the beneficiary or beneficiaries named therein, or to their

legal representatives; said warrant shall be mailed by the Sovereign Clerk to the clerk of the camp wherein deceased held his membership at the time of death, or to the clerk of the camp nearest contiguous to the place of residence of the payee, with proper instructions as to the delivery of same."

Section 4160 of Volume III of the South Carolina Code of Laws provides that:

"No subordinate body or any of its officers or members shall have the power or authority to waive any of the provisions of the laws and constitution of the association, and the same shall be binding upon the association, and each and every member thereof and their beneficiaries."

Section 109g of the defendant's constitution, laws and by-laws provides that:

"The clerk of a camp shall not by acts, representations, waivers, or by vote of his camp, have any power or authority not delegated to him or to the camp by the constitution and laws of this society to bind the Sovereign Camp or his camp."

It is clear that the clerk of the local camp had no power or authority not expressly or impliedly delegated, to bind the Sovereign Camp by any act, representation, or waiver; and it nowhere appears in the record before me that he had either express or implied authority to receive for the Sovereign Camp notice of any assignment or transfer of any benefit or claim under any beneficiary certificate or to bind the Sovereign Camp by his consent thereto, or that he undertook to do so.

The so-called instrument of assignment is as follows:

Jan. 9, 1921.

"To L. Y. Crosswell, Consul Commander, and J. W. Ivy, Clerk of Woodmen of the World, Pine Camp No. 108, Timmonsville, S. C.:

"This is to instruct and give you authority to turn over check which is due me by the Woodmen of the World on Policy No. 43959 for one thousand dollars ($1,000.00) less

lien against policy for dues on certificate of my husband, J. B. Saverance, deceased, to J. W. Williams, his heirs and assigns.

"Mamie Saverance, [Seal]
"Beneficiary.
"Mrs. B. L. Harrison.

"Witness my hand and seal this the 9th day of Jan., 1921, in the presence of

"W. H. Dusenbury.
"B. L. Harrison."

This letter merely instructs and authorizes the clerk of the local camp to deliver to J. W. Williams the check or warrant to be issued by the defendant to Mrs. Harrison. It does not purport to be an assignment of any part of the beneficiary fund and, even if it were, it is admitted that the defendant had no notice or knowledge thereof until after the death benefit had been paid in the manner prescribed by its constitution, laws and by-laws, strictly in accordance with the contract between the defendant and the said James B. Saverance. It appears upon the face of the order or so-called assignment that it was clearly understood that a check for the death benefit was to be sent to the clerk of the local camp for delivery to the beneficiary, and it is not even pretended that, when the check or warrant was issued, the defendant had any information that would justify it in doing otherwise.

The plaintiff contends, however, that the instrument in question was an assignment by the beneficiary of the death benefit which vested the same in her assignee; but, if the said instrument be regarded as an assignment, it did not bind the defendant because it could not be bound by an assignment of which it had no notice or knowledge until after it had disbursed the fund that was the subject of the assignment. 5 C. J., p 934, § 95. The transactions in question constitute merely an agreement or understanding between and among Mrs. Harrison, the beneficiary, J. W. Ivy, clerk of the local camp, J. W. Williams, and the plaintiff, to which

the defendant was a stranger. Consequently, the defendant is not bound thereby, unless knowledge of John W. Ivy, clerk of the local camp, is imputed to the defendant.

The plaintiff's attorneys contend (a) that J. W. Ivy, clerk of the local camp, acted as defendant's agent in receiving and writing letters in regard to the alleged assignment and that his knowledge thereof is imputed to the defendant, and (b) that if the clerk of the local camp did not act as the defendant's agent in connection with the transactions mentioned, he nevertheless became its agent when he received its warrant or check for delivery to Mrs. Harrison, and that his knowledge of the transfer of the death benefit to the plaintiff was then imputed to the defendant, which was thereby bound and made liable to the plaintiff.

In support of their first proposition, plaintiff's attorneys cite and rely upon the case of *Weathers v. Sovereign Camp of the Woodmen of the World,* 119 S. C., 402, 112 S. E., 44, between which and this case there is no analogy. That was an action to recover $1,000.00 on a certificate issued by the defendant to Troy E. Weathers for the benefit of D. Y. Weathers, the plaintiff. At the conclusion of the testimony, the presiding Judge directed a verdict in favor of the defendant on the ground that it appeared by undisputed testimony that the deceased was in arrears, and that when he paid his dues and applied for reinstatement, he failed to comply with the constitution and by-laws of the defendant association, in that he failed to file with the clerk a written statement and certificate, duly signed, that he was in good health and warranting that he would remain so for 30 days thereafter, and that he did not continue in good health for 30 days, but died before the expiration of that time; whereas, the by-laws provided that a suspended member should not be reinstated without such certificate and warranty and unless he continued in good health for 30 days thereafter. It appeared by the evidence that the clerk of the local camp was a representative or agent of the Sovereign Camp, with

certain enumerated powers, and that it was his duty to col-
lect and receive dues from members of local lodges and
to transmit the same to the Sovereign Camp; that the clerk
accepted dues from the delinquent member and sent him a
receipt therefor and notice that he had been reinstated,
without calling his attention to the aforesaid requirements
for reinstatement. The Court held that 'if the omission to
give notice of such requirements was intentional, it was a
fraud upon the rights of the insured, and that if it was
merely a mistake, then justice and fair dealing would not
permit the defendant to profit by the errors of the person
"whom it had selected as its representative." In other words,
the Court held that the clerk of the local lodge acted as the
agent of the sovereign camp in connection with the trans-
actions there in question and that, consequently, his acts
were their acts.

In the case at bar, there is no evidence whatever that the
clerk of the local camp was authorized or required to receive
or transmit to the Sovereign Camp notice of the transactions
relied on by the plaintiff, or that he had authority to bind
the Sovereign Camp by his assent thereto.

It is therefore necessary to consider the plaintiff's second
contention, namely, that the clerk of the local camp became
the agent of the defendant when he received its check or
warrant for delivery to Mrs. Harrison, and that his pre-
viously acquired knowledge of, and implied assent to, the
transfer of the death benefit thereupon became the defend-
ant's knowledge and assent, by legal imputation.

In considering the question here presented, it is important
to clearly understand the doctrine of imputed knowledge.
It is founded upon the duty of an agent to his principal and
the presumption that he has performed it.

"The duty of an agent to inform his principal of all
material facts is a duty which the law conclusively presumes
that the agent has performed, and a principal is therefore
affected with knowledge of all material facts of which the

agent receives notice or acquires knowledge while acting in the course of his employment and within the scope of his authority, although the agent does not in fact inform his principal thereof." 31 Cyc., p. 1587, subsec. 4.

"Notice to or the knowledge of a mere ministerial agent or servant will not be imputed to the principal." 31 Cyc., p. 1591, note.

We are not concerned with any personal obligation or duty to the plaintiff or his assignor that the local clerk may have assumed, but only with his duty to the Sovereign Camp.

Plaintiff's attorneys rely on the case of the *Bank of Anderson v. Breedin,* 119 S. C., 39; 111 S. E., 799, which is an action upon a promissory note discounted and acquired for the bank by its cashier, who knew that the note was given by the maker to the payee to secure the performance of an agreement and was to be surrendered if and when the agreement was performed. The discretionary authority of the cashier to discount and acquire the note for the bank being unquestioned and unquestionable, the Court held that his previously acquired knowledge of the condition attached to the note was imputed to his principal, the bank. That the cashier acted as the agent of the bank in discounting the note and thereby established a contractual relation between his principal and the maker of the note was unquestioned.

There is a wide difference between the case cited and this case. In the former, the bank, against which the doctrine of imputed knowledge was invoked, sued upon a contract to which it had been made a party by the authorized act of its cashier and thereby approved, ratified and confirmed his act.

In this case, the defendant, against which the doctrine of imputed knowledge is invoked, has asserted no agreement, but, on the contrary, is contesting the plaintiff's suit on the ground that the defendant is a stranger to the agreement sued on and expressly denies that the clerk of the local camp had any authority, as its agent, to receive notice of or

to consent to the same. In the case cited it is unquestionable that the cashier was vested with discretionary authority, as the bank's agent, to discount and acquire notes for it, and it was therefore his duty to communicate to the bank his knowledge of the condition attached to the note in question.

In the case at bar, the delivery of the check was a purely ministerial act, in regard to which the local clerk had no discretionary authority. In the case cited, the Court held that the bank was bound by imputed knowledge of all the terms of the contract that it asserted; but in this case, the Court is asked to hold that the defendant is bound by imputed knowledge of an agreement that it is contesting and of which (it is admitted) it had no notice or knowledge.

I find nothing in the record before me, or in the cases cited, to justify the conclusion that the purely ministerial act of delivering the check imposed on the local clerk the legal duty to communicate to the Sovereign Camp his knowledge of the agreement between Mrs. Harrison and others. As heretofore stated, we are not concerned with any personal obligation or duty to the plaintiff, or his assignor, that may have been assumed by the local clerk, or with his dereliction in regard thereto, but it is pertinent to say, in this connection, that there is no evidence of any act or omission on the part of the defendant that prevented the local clerk from delivering the defendant's check or warrant to the plaintiff, as contemplated in the letter or order from Mrs. Harrison, the beneficiary. She did not request that the defendant pay to Mr. Williams the amount owing to her on her husband's beneficiary certificate, but merely requested the local clerk to deliver the defendant's check (when sent to him in accordance with the contract between the defendant and her husband). There is nothing in the record to show that the defendant is responsible for the failure of the local clerk to do as requested.

For the reasons hereinbefore stated, I conclude that the plaintiff has totally failed to prove any contractual relation

between it and the defendant or any act or omission on the part of the defendant that would render it liable to the plaintiff in damages.

It is therefore ordered, adjudged, and decreed that the complaint herein be dismissed.

*Mr. Philip H. Arrowsmith,* for appellant, cites: *Sovereign Camp liable for negligence or default of local clerk:* 102 S. C., 393; 119 S. C., 402. *Principal bound by knowledge of agent:* 31 Cyc., 1393; 21 R. C. L., 842; 119 S. C., 39.

*Messrs. Dargan & Paulling,* for respondent, cite: *Assignment inadequate:* 49 So., 233; 27 Atl., 1088; 25 S. C. L., 197; 61 S. E., 70; 88 N. Y. S., 607; 6 L. R. A., 475; 60 Pac. 563; 20 L. Ed., 762; 202 Fed., 791; 157 Fed., 815. *Principal and agent:* 31 Cyc., 1587; Sec. 4a; 119 S. C., 39. *No waiver:* 3 Code 1922, Sec. 4160; 92 N. E., 144. *Death benefit not assignable:* 3 Code 1922, Sec. 4151, 4171; 102 S. W., 636; 92 Atl., 1071; 156 S. W., 11; 122 S. E., 682.

January 29, 1925.

The opinion of the Court was delivered by MR. JUSTICE MARION.

We are of the opinion that the conclusion reached by Circuit Judge Dennis, in his very clearly reasoned decree, is correct, and while there are other valid grounds upon which that conclusion might be rested, we are content to approve and affirm the decree of the Circuit Court for the reasons therein stated.

Affirmed.

MESSRS. JUSTICES WATTS and FRASER, and MR. ACTING JUSTICE W. C. COTHRAN concur.

MR. CHIEF JUSTICE GARY and MR. JUSTICE T. P. COTHRAN did not participate.